IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROMULA ACOSTA,

        Petitioner,

v.

                                                                                         Civ. N. 99-1268 MV/RLP

JOE WILLIAMS, Warden

        Respondent

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition, recommending that Petitioner's *habeas corpus* petition filed pursuant to 28 U.S.C. § 2254 be denied.  The Court has conducted a *de novo* review of the record and finds that the Objections are well-taken and will be **SUSTAINED**.  The Petition for a Writ of Habeas Corpus will be conditionally **GRANTED**.

### BACKGROUND

On February 7, 1997, petitioner Romulo Acosta was charged with vehicle burglary[1] in Dona Ana County, New Mexico.  The uncontested underlying facts are as follows.  On January 24, 1997, Romulo Acosta, a 55-year-old diabetic, consumed approximately four half-pints of vodka with a friend.  At approximately 4:00 p.m. that day, Michael Massie was at the Las Cruces Radiator Shop, in Las Cruces, New Mexico, just inside the open doors, where he was visible from the parking lot.  His truck was the nearest vehicle parked in the parking lot; he had left the keys in the ignition and the doors unlocked.  Mr. Massie heard the truck starting up and immediately

---

        [1]*See* N.M. Stat. Ann. § 30-1-3(B).

went outside. He heard the gears grinding. The truck never moved. He opened the driver's side door, reached in, and pulled out Mr. Acosta. Apparently, Mr. Acosta did not resist, but stated to Mr. Massie, "I'm an honest man, just let me go." Mr. Massie asked someone to call the police.

Las Cruces police officers Jeff Ferguson and Mark Nunley arrived shortly thereafter and grabbed Mr. Acosta. The officers arrested Mr. Acosta and searched his person. They found a syringe, but no insulin. The officers found nothing that could have been used to commit a burglary. Officer Ferguson later testified that Mr. Acosta smelled of alcohol, that his speech was very slurred, and that his eyes were very watery. Officer Ferguson had to help Mr. Acosta get to the police car because Mr. Acosta was wobbling as he walked. Officer Ferguson opined that on a scale of one to ten of intoxication, Mr. Acosta was a six and that Mr. Acosta was more intoxicated that the average drunk person he had dealt with.

Mr. Acosta was brought into the police station, booked,[2] and placed in a holding cell. Mr. Acosta lay on the floor for approximately ten to fifteen minutes, then woke up and asked Officer Ferguson where he was and what was going on. At some point while he was in the holding cell, Mr. Acosta had spasms and complained of coughing and a really dry mouth. Officer Ferguson testified at trial, without objection, that Mr. Acosta was faking the spasms.

A few hours after his arrest, Mr. Acosta was taken to the emergency room.[3] Tests taken

---

[2] Officer Ferguson testified at trial that during the booking process, Mr. Acosta appeared to be coherent and responded appropriately to questions about his name, date of birth, and other basic information.

[3] It is not clear from the record whether Mr. Acosta asked to be taken to the hospital or whether the arresting officers believed that Mr. Acosta was in need of medical attention. Counsel did not interview the arresting officers, or anyone else, to determine why Mr. Acosta was taken to the hospital on this date. Tr. at 14.

at the hospital on that date revealed that Mr. Acosta's blood sugar was 393, which is high. Mr. Acosta told hospital staff that he did not know why he was there and refused medical attention. He then left against medical advice. Mr. Acosta testified at trial that he did not remember anything about what happened on the day of his arrest after approximately 12:00 noon, when he was drinking in an alley. He testified that he did not remember being at the radiator shop, being in Mr. Massie's truck, or being arrested. The next thing he did remember was waking up in jail on January 25, 1997, the day after his arrest, and asking why he was there. He requested medical attention because he knew his blood sugar was high. He was taken to the emergency room again. His blood sugar that day was 511. He was given insulin and released.

  Mr. Acosta was found guilty and sentenced to eight years imprisonment to be followed by one year of parole. He appealed, presenting only the issue of whether he was denied effective assistance of counsel because counsel failed to present expert testimony concerning the combined effects of high blood sugar and alcohol in a diabetic. The Court of Appeals affirmed the conviction, citing *State v. Martinez*, 927 P.2d 31 (N.M. App. 1996), for the proposition that *habeas corpus* proceedings are preferred over remand when the record fails to show a prima facie case of ineffective assistance of counsel. *See id.* at 39 ("This Court has expressed its preference for *habeas corpus* proceedings over remand when the record on appeal does not establish a *prima facie* case of ineffective assistance of counsel.") Mr. Acosta sought review in the New Mexico Supreme Court and his petition for *certiorari* was denied.

  On June 8, 1999, Mr. Acosta filed a *habeas corpus* petition in the Dona Ana County district court, alleging that he received ineffective assistance of counsel at trial because counsel failed to adequately investigate and present evidence of his intoxication, insulin deprivation, and

3

irrational state of mind to support his lack of specific intent defense.  Mr. Acosta requested an evidentiary hearing, but his request was denied.  The district court then denied the *habeas* petition without a hearing, on the mistaken ground that the Court of Appeals had already addressed his claim.  Mr. Acosta again sought review in the New Mexico Supreme Court, and his request was denied.

On November 1, 1999, Mr. Acosta filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in this Court, setting forth the same claim that he had presented to the Dona Ana County district court.  The matter was referred to a United States Magistrate Judge and counsel was appointed to represent Mr. Acosta.  The Magistrate Judge then held an evidentiary hearing.  Concluding that Mr. Acosta failed to satisfy the standard for ineffective assistance of counsel set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984), the Magistrate Judge recommended that Mr. Acosta's *habeas corpus* petition be denied.  Mr. Acosta filed timely objections.

## STANDARD OF REVIEW

Upon the timely filing of objections, this Court is required to make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's findings or recommendations.  *See id.*

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, amended 28 U.S.C. § 2254 in two ways respecting the standard of review to be applied to *habeas corpus* petitions filed under that provision.  First, with respect to factual findings, the AEDPA amended § 2254 to provide that "a determination of a factual issue made by a State court shall be presumed

4

to be correct" and that the prisoner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Second, with respect to legal conclusions, the AEDPA amended the statute to provide that a petition filed by a prisoner in custody pursuant to a judgment of a state court "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Mr. Acosta contends that neither of these provisions applies.

  The Court finds that § 2254(e), pertaining to the deference given to state court factual findings, does not apply in this case for the simple reason that no state court has made any factual findings in this case. As explained above, the Court of Appeals affirmed the conviction on the ground that *habeas corpus* proceedings are the preferred method for raising ineffective assistance claims. The district court entertaining Mr. Acosta's state *habeas corpus* petition, however, denied the petition without holding an evidentiary hearing and without making any factual findings. Therefore, no deference is due under § 2254(e).

  The Court also finds that AEDPA's standard of review pertaining to legal issues does not apply in this case. Where the state court has made a legal determination as to a claim presented in the petitioner's § 2254 petition, the petitioner may succeed only on a showing that the state court's determination of the claim "was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1 ), or an unreasonable

determination of the facts in light of the evidence. *See id.* § 2254(d)(2)." *Johnson v. Gibson*, – F.3d – , 2001 WL 722072, *2 (10th Cir. 2001). However, where the state court does not address the merits of a claim, this Court makes "its own determination in the first instance." *Thomas v. Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000). Here, the state courts did not address the merits of Mr. Acosta's ineffective assistance claim. Therefore, the Court will proceed to make its own determination of the claim in the first instance.

## ANALYSIS

In order to demonstrate that his Sixth Amendment right to the effective assistance of counsel was violated, Mr. Acosta must make two showings. "First, [he] must show that counsel's performance was deficient. . . . Second, [he] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

### Deficient Performance

Mr. Acosta's trial counsel's performance was constitutionally deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *See id.* at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Mr. Acosta argues that counsel's performance was constitutionally deficient in that she failed to adequately investigate and put on evidence of Mr. Acosta's intoxication, insulin deprivation, and irrational state of mind.  A "reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived" is "[e]ssential to the rendition of constitutionally adequate assistance." *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000).  The Supreme Court has specified, in accordance with this principle, that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

A court reviewing a claim that counsel failed to adequately investigate a particular claim or defense must assess a decision not to investigate for reasonableness. *Strickland*, 466 U.S. at 690.  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Williamson v. Ward*, 110  F.3d 1508, 1514 (10th Cir. 1997).  Counsel "is entitled to substantial deference with respect to strategic judgment." *United States v. Kauffman*, 109 F.3d 186, 190 (3rd Cir. 1997).  However, the failure to investigate or research issues germane to a defense cannot be appropriately deemed "strategy."  The failure to investigate an issue that is germane to an available affirmative defense deprives the defendant of "the meaningful representation which the Constitution requires." *Id.*

In this case, counsel knew that she would be putting on an intoxication defense. Tr. at 7. Counsel sent her investigator to get a copy of the booking video that is typically maintained by the jail, but apparently the video equipment was broken on the day of Mr. Acosta's arrest and no such video existed. Tr. at 7-8.  Counsel's investigator was able to obtain records from the jail that

7

included a copy of the emergency room report from the day of the arrest. Tr. at 8. Counsel also had her investigator obtain copies of the medical records from the hospital itself. Tr. at 9. The investigator spoke with some of the jail personnel and counsel interviewed Mr. Massie. Tr. at 9.

     Yet, while counsel knew that Mr. Acosta had visited the hospital twice during the twenty-four hour period following his arrest, she failed to interview any of the hospital personnel who were there to observe Mr. Acosta's behavior. Tr. at 17. While she knew that the arresting officers had information about Mr. Acosta's state of mind at the time of the offense, and, in fact, intended to elicit information from them during cross-examination, she failed to interview them to determine the extent of their knowledge. Tr. at 15. She knew that jail personnel had observed Mr. Acosta during the twenty-four hour period immediately following the arrest, yet she failed to interview anyone at the jail to determine precisely what they observed. Tr. at 10. Counsel knew that Mr. Acosta was diabetic, that he had a very high blood sugar count on the day of the arrest, and that he had on his person at the time of the arrest a syringe but no insulin. However, counsel did not do any investigation to determine the possible effects of Mr. Acosta's high blood sugar on his state of mind. Counsel knew that despite his high blood sugar and need for medical attention on the day of his arrest, Mr. Acosta refused medical treatment. Tr. at 16-17. Yet she did no investigation to determine the reason for this irrational behavior.[4] Counsel also failed to interview any other people who may have been witnesses to Mr. Acosta's intoxication on the day of the arrest. She testified at the evidentiary hearing that this was because Mr. Acosta did not give her

---

[4] Apparently, counsel believed that the medical records were of little use because they showed that, in her opinion, Mr. Acosta's medical condition was "not terribly serious." Tr. at 27. Mr. Acosta contends, however, that the records demonstrate that Mr. Acosta had a very high blood sugar two hours after his arrest and that, notwithstanding this high blood sugar, he refused medical treatment, which suggests an irrational state of mind.

sufficient information to be able to locate such witnesses; however, she had no notes in her files to substantiate this assertion. Tr. at 20-21.

The Court can find no reasonable explanation for counsel's failure to investigate and put on evidence regarding the relationship between Mr. Acosta's diabetes, and his resultant high blood sugar, and excessive alcohol consumption. In fact, counsel admitted at the evidentiary hearing that she did not do all she could to assist in Mr. Acosta's defense. Tr. at 49. Counsel's stated reason for failing to introduce hospital records or to consult a medical or mental health expert was that doing so would open the door to disfavorable evidence. Specifically, she was concerned that the hospital records showed: (1) that hospital personnel believed Mr. Acosta was competent to refuse medical treatment on January 24, 2001 and (2) that Mr. Acosta stated on January 25, 2001 that he had only been without insulin for twenty-four hours, which appears to undermine his claim that he was severely insulin-deprived.

Counsel's concern is belied by the record. First, the notation on the medical record that Mr. Acosta refused medical treatment does not necessarily reflect a hospital staff member's opinion that Mr. Acosta was competent. In fact, the hospital records show that Mr. Acosta refused medical treatment against medical advice. Tr. at 16. Moreover, given the fact that Mr. Acosta was unconscious for the greater part of the twenty-four period preceding his January 25, 2001 trip to the hospital, it seems likely that he would be confused about the relevant time period when explaining his insulin deprivation to hospital personnel. Counsel "assumed" that Mr. Acosta gave accurate information to hospital personnel on January 25, 2001, Tr. at 26, and never asked him whether he actually did so or not. Counsel assumed that if Mr. Acosta was behaving in an irrational manner, it would have been documented in the medical record, Tr. at 51, but never

9

asked any hospital personnel whether Mr. Acosta was behaving irrationally or not.

Counsel has provided only one explanation for her failure to interview the hospital personnel. Her explanation is that, based on her experience, when emergency room personnel are asked about medical records, they say they have no independent recollection of the events in question. Therefore, she did not think an interview of emergency room personnel would be "fruitful." Tr. at 17.[5] It is clear, therefore, that counsel's decision not to interview hospital personnel was based on considerations other than trial strategy.

Finally, counsel testified at the evidentiary hearing that she did not subpoena jail personnel to testify regarding Mr. Acosta's intoxication because she thought that she could elicit the testimony on cross-examination. However, she admitted that she never interviewed the investigating officers and gave no reason for her failure to do so. Moreover, she failed to follow up on her intention to elicit information from the jail personnel regarding Mr. Acosta's intoxication.

When asked at the evidentiary hearing whether she believes she provided Mr. Acosta with reasonable professional assistance as his attorney, counsel testified as follows:

> [Mr. Acosta] didn't get the O.J. defense, that's clear. I have to be truthful, I practice – I would describe what I do as a M.A.S.H. representation in the sense of we deal with huge volumes of cases and we have to, like any triage unit, assess cases as this case, no matter what I do, my client is sunk; this case, no matter what I do, my client is not going to skate; and then, there is the case in the middle, where if I really put a lot of effort into this case, I could really make a difference and tip the balance and the outcome of the case.
>
> That is the reality of being a state public defender.

---

[5] Counsel entered her appearance one month and two days after Mr. Acosta's arrest. Tr. at 18.

10

> I assessed Mr. Acosta's case, quite truthfully, from the beginning as a case where I didn't think we had a chance of prevailing. . . .
>
> Might it have made a difference if I had called five more people to say he was intoxicated, I thought the jury heard he was intoxicated, we got the instruction for intoxication, but might we have been more persuasive if I had put on booking officers to the jail to the extent that they remembered anything at the time of trial, I can't say.
>
> I mean, I look back at every trial, even the acquittals, and say 'I could have done better and I could have done more.' I could say I could have done more in Mr. Acosta's case.

To the extent that counsel's approach was based on strategy at all, such an approach cannot properly be characterized as "reasonable trial strategy."[6]

In sum, the Court finds that trial counsel's performance was constitutionally deficient in that she neither properly investigated Mr. Acosta's intoxication defense nor made a decision that made an investigation unnecessary. She did argue in her closing argument that Mr. Acosta was drunk on the day of the offense and that his intoxication was exacerbated by his lack of insulin. However, she had not put on any evidence that would have given the jury a basis for understanding or believing this argument. Her failure to investigate and put on evidence to support this argument fell below the standard of reasonably competent counsel.

## **Prejudice**

The Court also finds that counsel's deficient performance was prejudicial. As noted above, in order to demonstrate prejudice, Mr. Acosta must prove that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466

---

[6]*Accord Baxter v. Thomas*, 45 F.3d 1501, 1514 (11th Cir. 1995) ("An attorney's decision to limit his investigation . . . must flow from an informed judgment. Our case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice among them.") (internal quotations omitted.)

U.S. at 687. To do so, Mr. Acosta "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In making this determination, the reviewing court "must consider the effect of any errors in light of the totality of the evidence." *Keller v. Larkins*, 251 F.3d 408, 418 (3rd Cir. 2001).

In New Mexico, a "showing of intoxication is a defense to a specific intent crime where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Romero*, 958 P.2d 119, 125 (N.M. App. 1998) (citing *State v. Lovato*, 793 P.2d 276, 277 (N.M. App. 1990)). New Mexico adheres to the common law rule that "an act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." *State v. Campos*, 921 P. 2d 1266, 1281 (N.M. 1996) (Franchini, J., dissenting) (quoting Black's Law Dictionary 822 (6th ed. 1990) and citing *State v. Tapia*, 466 P.2d 551, 552 (1970)). Therefore, evidence specifically relating to Mr. Acosta's mental state, not only to the fact of his intoxication, was crucial to his intoxication defense.

The jury in this case heard testimony from Officer Ferguson that Mr. Acosta seemed to be intoxicated. Counsel argued in her closing argument that Mr. Acosta was intoxicated. However, the jury was not informed that Mr. Acosta was a diabetic and needed to receive insulin shots twice daily. The jury was not informed that Mr. Acosta had a very high blood sugar reading on the date of the arrest. The jury was not informed that, notwithstanding his medical needs, Mr. Acosta told hospital personnel that he did not know why he was in the hospital and refused

medical treatment. The record amply supports the conclusion that Mr. Acosta was behaving irrationally the day of and the day immediately following his arrest.[7] Without having any information before it concerning Mr. Acosta's irrational behavior, however, the jury members were left with the impression that Mr. Acosta was simply drunk; they had no way of appreciating the degree to which he was impaired. In other words, while the jury was informed that Mr. Acosta was drunk, there is nothing in the record to indicate that the jury was informed as to how Mr. Acosta's intoxication might have affected his mental state.

The Magistrate Judge did not adequately address Mr. Acosta's argument. Rather, the Magistrate Judge concluded simply that all of Mr. Acosta's contentions were based on mere "speculation." However, the question with regard to prejudice "is not whether counsel's ineffectiveness must be demonstrated by showing the trial would have resulted in a defense verdict, but whether the omitted evidence 'creates a reasonable doubt that did not otherwise exist.'" *Stouffer v. Reynolds*, 214 F.3d 1231, 1234-35 (10th Cir. 2000) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)). As the Supreme Court emphasized in *Strickland*, the petitioner must demonstrate only a "reasonable probability" that the verdict would have been different, where a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." The Court finds that there is a reasonable probability that had counsel adequately investigated and presented evidence of Mr. Acosta's state of mind, the jury would have accepted his intoxication defense. Accordingly, Petitioner has satisfied the *Strickland* prejudice standard.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT** the Objections are hereby **SUSTAINED**. The

---

[7]Trial counsel conceded at the evidentiary hearing that this was so. Tr. at 51.

Petition for a Writ of Habeas Corpus is hereby **GRANTED.** Petitioner is hereby ordered to be **RELEASED** unless, within sixty days of the date of entry of this order, the State has commenced proceedings to retry the Petitioner, Mr. Acosta.

    **IT IS SO ORDERED.**

                                                        _____
                                                        MARTHA VÁZQUEZ
                                                        UNITED STATES DISTRICT JUDGE

<u>Attorneys for Plaintiff</u>
Thomas B. Jameson

<u>Attorney for Defendant</u>
Ann M. Harvey